Thank you, and welcome to the Ninth Circuit. We will hear the cases in the order they appear on the calendar. We, as usual, will have petitioner or appellant reserve time, but we will not watch your time for you. And we will take a break after the second case just for planning purposes. Thank you very much. You may begin. Good morning, Your Honors. May it please the Court, my name is Sabrina DeMast and I represent the petitioner in this matter, Jorge Segovia. I respectfully request to reserve three minutes for rebuttal. Your Honors, the petition for review should be granted in this matter and the case remanded to the agency for two main reasons. First, substantial and probative evidence does not support the agency's determination that there was a reason to believe the petitioner had engaged in money laundering. Well, is that an evidentiary problem or is it a legal error in the sense that they misunderstood the statutes? Your Honor, I think in this decision references only 1956A2, which, as is conceded by the respondent in their brief, is an international money laundering statute that does not apply to this case. So first, I think as a legal error, the Board has simply cited to an inapplicable statute to defend its decision on this ground. But I thought it was also the case that there's a mismatch of the Texas statute and the federal statute. Your Honor, that's correct, and that goes to 1956A1, which seemingly was relied upon by the IJ. And I say seemingly, Your Honors, because really at the very beginning of the immigration judge's analysis on the money laundering, there's simply a statement that there is a reason to believe he engaged in money laundering and a string cite to cases mostly about the drug trafficking reason to Now, it is the position of the respondent that 1956A1 applies to this case. And although it's our position that that is not the ground that the Board relied on, and therefore, this court should not be considering it, if the court disagrees, then I agree with you, Your Honor, there is in fact a mismatch between not only the Texas statute and the federal definition, but the factual findings made by the immigration judge would be insufficient to make a finding under 1956A1. The mismatch that Your Honor has referred to is the idea that the statute, the Texas statute that he pled guilty under criminalizes possession and mere transportation, things that are outside the federal definition. The evidentiary insufficiency here is because the respondent is asserting in their brief, that there isn't just a mere transportation at issue in this case, but rather a delivery. And they cite to U.S. v. Go for the proposition that a delivery does meet the standard under 1956A1. The problem, of course, Your Honor, is that there was no factual finding by the agency. Can you stop one minute? The clock is not working. So I have no idea where you are in terms of the clock, so I'm going to assume that we're about six minutes in. Could you do that? All right, go ahead. Thank you, Your Honor. The delivery requires a delivery to a third person, and there is simply no factual finding by the immigration judge in this case, nor by the board, that the money that was in the car with the petitioner in either the arrest in Colorado or the arrest in Texas was being delivered to someone else. The respondent suggests in their brief that the court should find that it was bound for someone in the Reyes family or someone associated with Gold Star Roofing, but that's not a factual finding that was made by the judge or affirmed by the board, and I would respectfully submit it's not appropriate to make that factual I have is do we need, is this issue independently necessary to reach? I believe it is, Your Honor, because the only ground on which the board affirmed the denial of the adjustment of status was the reason to believe money laundering. Because the IJ had another reason, but the board didn't approve it. Correct, Your Honor. The board did not reach the issue of whether or not as a matter of petitioner in this matter. Your Honor, there were two cases, one cited by the respondent in their brief and one relied on by the immigration judge to analogize as to why this should be considered a money laundering scenario, but both of them I believe are readily distinguishable. There's the Go decision, which was referenced by the respondent in their brief, but as I mentioned, Go involved in actual delivery. The individual paid a driver to take the money to a third party and then stood in an adjacent room to observe the delivery. There was clearly a destination third party to complete a delivery to, and as I mentioned earlier, there was simply no finding by the agency that this money was bound for any person at all other than the people who were in the car. If we were to agree with you, we would presumably remand, right? Yes, Your Honor. And it is conceivable, maybe even probable, that they would find that this was likely to be a delivery because otherwise what was going to happen to the money? It was just going to be put under the mattress. So it wouldn't seem too difficult to infer that it was going to go to somebody or that it was going to go to the bank, which would have been a transaction itself, I suppose. So likely it's going somewhere and likely it will be so found, but there's been no finding at this point. Is that basically where we are? Yes, Your Honor, that's correct. The agency made no finding and it would need to be remanded to the immigration judge to address that fact. The other case, Your Honor, which was relied on by the immigration judge, Salazar, I think is also easily distinguishable. First of all, it's an unpublished decision, but secondly, Salazar himself pled guilty to the federal bulk smuggling statute, which requires a cross-border transaction, money either coming into the U.S. from abroad or leaving the U.S. to go abroad, and therefore it fits neatly into 1956A2, the international money laundering statute. But all parties have agreed that 1956A2 doesn't apply to this case. Your Honor, moving to the evidentiary issues, with respect to the CCAS reports and the I-213 that were admitted by the immigration judge and used in her credibility analysis and in her reason to believe money laundering analysis, these documents contained multiple and clear factual errors. The I-213, I think in particular, Your Honors, is really astounding. The respondent concedes in their brief that the entire narrative section about the immigration history doesn't actually pertain to the petitioner. It discusses a female Mexican national who had previously been excluded from the United States, and the petitioner in this matter is a male Salvadoran who had never been excluded from the United States. That the IJ still found that document to be admissible is contrary to both BIA precedent and virtually all federal court decisions. The presumptive reliability that attaches to an I-213 only attaches if there is no evidence of erroneous information contained in the document. And here we clearly have quite substantial erroneous information. Similarly, Your Honor, the CCAS reports... Tell me something. Wait a minute. What difference does this make? Suppose somebody said, okay, the 213 should have been admitted, then what? Well, Your Honor, it's one piece of evidence. So let me take a step back. If the court agrees with me that the evidentiary record as it stands, because there's no finding of delivery, doesn't meet the definition of, you know, doesn't have substantial and probative evidence for a reason to believe finding, then this is probably not an issue the court has to address. But if the court disagrees with me and thinks that the evidence as relied upon by the agency could substantiate that finding, then the admission of these documents becomes at issue. They're also at issue in the credibility determination for the petitioner. It's something like a Jenga game where you're pulling out one of the pieces that substantiates the agency's finding, Your Honors. And so if the document should have never been admitted, then relying on them for the credibility and the reason to believe determinations was error by the agency. Your Honor, the CCATS documents are similarly containing information we know is not, is contradictory. They're in fact inherently, internally contradictory. In one place, they say they never searched a conveyance. In another place, they say they searched the car. That seems very material, Your Honor, since the search of the car and the outcome of that search is the whole, is what took place during the Colorado arrest, which again forms a very significant part of the immigration judge's finding that there was a reason to believe the petitioner had engaged in money laundering. So to say that the error is minor is disingenuous because it goes straight to the heart of why the documents were admitted by the immigration judge and what they were used for by agency to begin with. Your Honors, if the court has no other questions for me at this moment, I'll reserve the remainder of my time for the rebuttal. Thank you. Yes, sir. May it please the court, Your Honors. Tim Remitz on behalf of the United States Attorney General. Financial evidence supports agency's determination that the record provides reason to believe the petitioner engaged in money laundering as defined by 18-1956-A1 and therefore is inadmissible and ineligible for adjustment of status. Between the text of guilty plea the petitioner rendered... I'm having trouble, listen, I'm could you get closer to the microphone or maybe speak more? I'll speak a little, so I'm actually calling in through my phone just to, I was afraid that the call might, so the video might drop. It's also quite choppy. Yeah. I got the telephone. It's choppy and some words come through and some words do not come through. So perhaps you could at about the rate that I'm speaking now so that we can get everything that you want to say. Let me try disconnecting the headphones. That in general seems to be useful. We've had the same problem yesterday and somebody disconnected their headphones and it was much better. Is this better? Can the court hear me clearly? Much better. Okay. Thank you. Sorry for that burden. Can I make one more suggestion? Can you put that on hands free? Sure. I hope I can hear the same. All right. Well, go ahead. I'm just trying to protect you from having to stand there with the thing next to your ear. Can you hear me the same? Yes. Am I still clear? No. Go ahead. Sorry. I apologize. May it please the court, Your Honor, Sam Randolph on behalf of the United States Attorney General, substantial evidence supports the agency's decision that petitioner is eligible for adjustment status is inadmissible for money laundering. And between the Texas guilty plea to money laundering, if we need Texas investigators... But there is a mismatch in the statutes. Is that right? Which was missed by the agency? No. One requires... There's just a difference between them in terms of the Texas statute covers more than the federal one does. That's correct. But the agency didn't realize that. The agency does realize that. That's in the immigration judge's decision. And that is what petitioner argued for the immigration judge was brief. Pick up your phone again, sir. We're not hearing. Go back to the phone. I missed that last part. Can you say that last part again? Please pick up the phone again. You're going to have to pick up the telephone again. We're not hearing you. Okay. I think that's about it. Talk to the phone. At the immigration judge's decision, where he's now analyzing the money laundering statute, that is the first part of his analysis, is he references the petitioner's argument about the overbreath of the Texas statute. And because that was the petitioner's main argument, was it because the Texas statute is broader, includes mere possession and mere transportation, therefore it wasn't probative of money laundering. And you see the immigration respond with the court's precedent saying that a reason to believe standard is not a categorical analysis. We're not comparing elements to elements. We are simply looking whether the reliable evidence in the record gives the reasonable observer a reason to believe someone, their behavior engaged in something like money laundering. It's a much, it's a lower standard than the categorical approach. And that's why you see the immigration judge reject that right off the bat, because it's not a categorical analysis. I don't understand why that matters. He still had to make a finding as to the elements of the federal crime. Did he do that? It cites 1956A1. The immigration judge cites that. Okay. And then he notes that there's not a lot of precedent interpreting this money laundering statute. There's two unpublished decisions by the court, one of which was fairly identical to petitioner's facts. That was Salazar Gutierrez. And you see the immigration judge cite that case where there was hidden cash concealed in the compartment of the vehicle. And the court affirmed that that was providing reason to believe that the person engaged in money laundering. So let's, we see the immigration judge noting that this is not just a categorical case. The reason to believe standard is different than that. We're just looking at whether there is reason to believe your behavior meant that you might have been involved in money laundering. And I think this case, there's lots and lots of evidence indicating he was engaged in money laundering. And not only was there a guilty plea to money laundering, which is overbroad, but it's still the Texas statute, but it's still appropriate for the fact that he engaged in money laundering as defined by 1956A1. Well, 1956A1 requires delivery, right? And the Texas statute doesn't. Is that basically the difference? The Texas statute has that included in the statute, but also includes broader behavior, like mere possession. Or transportation. Right. Or transportation, correct. So it includes more behavior, but it definitely covers 1956A1. So it's possible by his conviction, categorically, that he was convicted of conduct under 1956A1. And it really is the petitioner's conviction of that behavior under 1956A1. Because he is trying to prove he is clearly, and beyond a doubt, admissible to the United States. And he could not show that. He could show the statute overbroad, but when you get to his own testimony, you get to the investigative report, they all show that he was, they gave an inference that he was delivering illicit went to different states, met with a member of the Reyes family, and then traveled back to Los Angeles with large amounts of cash concealed in a hidden apartment of his vehicle, which a canine search indicated the presence of narcotics. That is more than enough for an inference for the immigration judge to find that he was delivering illicit proceeds to another person. And his testimony corroborates most all the investigative reports. He admits that he was arrested in Colorado with Maria Reyes, and that there was a hidden compartment in the vehicle, and that they found money wrapped in cellophane in the vehicle. He admits that subsequently, a year later, he was found doing the exact same thing with a different member of the Reyes family in Texas, where he's again, police found he was traveling in a vehicle, and there was a hidden compartment in the vehicle, there was cellophane-wrapped, vacuum-sealed money hidden in the vehicle, and he admitted it guiltily, the money was part of drug trafficking. So, as the investigative report in Texas also states, that this was behavior, conduct that was consistent with someone who was narco-trafficking along the southern border. That is, people bring the drugs up from Mexico, and people run the cash back to the cartel in Mexico. And I would say that this type of investigation does not give someone a reason to believe someone was engaged in money laundering. I don't know what facts would be necessary. And as I already noted, Salazar Gutierrez had very similar facts, unpublished, so we don't know exactly what the facts were, but in that case, there was one arrest. And it's unpublished, and it's not presidential, so please stop. This has become an epidemic, and we really don't need to listen to it. An epidemic of relying on unpublished opinions that are not presidential. So, thank you. It's not just you. Of course. Otherwise, the Commissioner turns to the reliability of the reports themselves, and the first problem with challenging the reliability of the reports is testimony already corroborated most everything that's important in those reports. Everything about his arrest. So, a petitioner is now also stating that, well, there's nothing in the record that shows I transferred these illicit proceeds or an intent to transfer these proceeds. That wasn't what he was claiming for the immigration judge. He claimed the statute was overbroad, but he never claimed I wasn't transferring these proceeds. What he claimed was for the Colorado arrest, one, that the cash was the result of car proceeds. And what he claimed for the Texas arrest was, two, I'm completely innocent. I had no knowledge of that money. And the Texas arrest is more easily put, or his claim about the Texas arrest is more easily put aside because he already pleaded guilty to money laundering in that case. He admitted before Texas court of law that I knew those proceeds were part of drug traffic. He turned to the Colorado arrest where he claims that, not that he wasn't transferring these proceeds, but simply that these were car sale proceeds he was transferring. The immigration judge reasonably found that implausible because he couldn't explain why he would wrap car proceeds in cellophane and hide it in a hidden compartment. So, he simply gave implausible explanations for his two arrests. He could not, he never claimed he wasn't transferring this money. He simply gave two explanations, which the immigration judge reasonably found implausible or contradicted in the Texas case as guilty plea. So, his challenge of the reliability of the reports really don't even matter at the end of the day because he already admitted into his own testimony to all of the criminal conduct alleged in those reports. And he doesn't, and so we have the adverse credibility termination. To go back to the money laundering question, if we could, looking at the IJ opinion, it does not conclude that there was evidence that he was delivering or involved with a transaction. It says that the way it tries to resolve the problem is saying that the evidence in the record indicates that the respondent was arrested while transporting the proceeds of a criminal activity, an offense described under 1956A2, but that's not the right statute and transporting isn't sufficient. Is that right? Looking at the immigration decision or the board decision? I'm looking at the board decision. Yes, but as the government's brief admitted, the board should not have cited 2A2. Well, so therefore, the board does not have any conclusion that actually deals with an element of applicable federal statute. Well, the board affirms the immigration judge's finding, and then it just simply adds at the end that we also would look to A2, and we don't need to find transactions. In any event, we don't need a financial transaction for A2, so that is really just an additional conclusion by the board. So, as the government argued in their brief, we don't need that. The board should not have looked at that, but it did stick with the immigration judge's initial determination that it meets the definition under A1. And again, as I was stating, Tishner did not argue before the agency he did not transfer this money, had no intent to transfer this money. What he was arguing was that I was innocent in the Texas arrest, I didn't know about that money, and the Colorado arrest, I was transferring car proceeds. So, that's why you don't see the immigration judge or board really discussing this, because he wasn't really disputing that he was and then gave these two implausible explanations for why he was found transferring this money. One, I was innocent, I didn't know about the money in Texas, except he plead guilty to illicit proceeds and money laundering in Texas. And two, in Colorado, I was transferring car proceeds. So, that didn't make any sense why he would wrap car proceeds in cellophane and hide it in a You're not seeing this transfer addressing the decision, because that wasn't what he was claiming. He claimed he made a general overbreadth argument, which is true. The statute includes more conduct than the federal statute, but he never claimed that his conduct, that's not what he did. Thank you. Do you want to go on? I will arrest Mr. Cortez. More questions? No, thanks. Okay, thank you very much. Ms. Jamez. Thank you, Your Honor. With respect to this issue of whether or not he, the petitioner, did or did not challenge the issue of the delivery to a third party at the IJ level, I think that's not the dispositive question before the court. The question before the court is, did the agency make factual findings that each element of 1956A1 was violated, which, as Your Honor pointed out, needed to be done in order to find that he was inadmissible under the reason to believe money laundering statute? Is that necessary, counsel, if the standard is not, did he commit the crime, but do they have reasonable grounds to believe that he was trafficking? Isn't that a much easier standard to meet? Your Honor, it is true that reason to believe is a lower standard than a conviction, but it still is a reason to believe that each of the elements of money laundering have been met, and without a factual finding about... But they did make a factual finding that the record contains reasonable, substantial, and probative evidence that there is a reason to believe the respondent engaged in Why isn't that sufficient? Your Honor, I would submit that that's a legal conclusion, that there's substantial evidence in the record to support the finding, but there's no factual basis for reaching that conclusion if the agency never addressed whether or not a delivery was intended to take place. Or whether there was reasonable grounds to believe that a delivery was about to take place, not whether it was about to take place. Correct, Your Honor. Whether there was reasonable belief that a delivery was to take place. How about his travels back from Texas to California? Isn't that a reason to believe that he's delivering? Your Honor, two things, I would say. First of all, I don't think traveling in a car... In fact, respondent concedes traveling in a car with money, transportation, is not enough, right? For all we know, and this is sort of the problem, I think, with speculating without findings by the agency, maybe he and Mr. Reyes intended to keep all the money that was in the car. Not the money, he says, that he didn't know was there. Correct, Your Honor. He says, how could he be knowledgeably transporting money, not for delivery, of money that he claims, I don't know it was there? Your Honor, I understand that there was an adverse credibility determination, but even if you don't accept... But why was there an adverse credibility? Because this was a completely bogus story. Your Honor, even if we accept that the record indicates that he knew the money was there, and I concede that the plea itself relies upon him knowing the proceeds came from illicit activities, but possessing and transporting proceeds of illicit activities is not a form of money laundering under the federal statute. And so, again, I agree with the judge's assertion that this may all, on remand, come out not favorable to him. But there's still a reason that a record has to be developed at the agency level on this particular question. Whether it comes out favorably to him or not is something we can't judge at this moment because the record is incomplete on the question as to what the intention was to do with the money. Was it to keep it? Was it to deposit it in a bank? Was it to give it to somebody else in the Reyes family or Gold Star Roofing? This is simply just not addressed by the agency record and no factual findings made by the agency. Okay, go ahead. You're just about out of time. Oh, I was just going to say if the court has no further questions, then I'll rest. All right. All right. Thank you very much. The case of Sokovia v. Garland is submitted.
judges: BERZON, BEA, NGUYEN